LAGOA, J.
 

 American Educational Enterprises, LLC, (“American”) seeks a writ of certio-rari quashing that portion of the trial court’s order compelling production of items 1-7 listed in the Sixth Request for Production propounded by The Board of Trustees of the Internal Improvement Trust Fund (“Board”). For the following reasons, we grant the writ.
 

 The underlying dispute between American and the Board
 
 [1]
 
 arises from American’s 2001 purchase of certain state-owned
 
 *943
 
 real property.
 
 [2]
 
 In April 2001, the Board sent a bidding package to prospective buyers advising that the property was sold “as is,” and that the tax assessed value was $4,462,068. The bid package also required a minimum bid of $8,750,000. Florida National College (“FNC”), the original bidder, submitted a bid of $4,025,000 and a $402,500 earnest money deposit.
 

 In May 2001, the Board notified FNC that its bid and contract offer was accepted. At that time, FNC sought financing from Citibank, which obtained an appraisal for the property. The 2001 Citibank appraisal determined that the property’s market value was $2,850,000. FNC also received the Board’s 1999 appraisal of the property for $3,275,000. The Board had not included its 1999 appraisal in the bid package. In response to FNC’s concern about the 1999 lower appraisal value, the Board declined to re-negotiate the purchase and stated that FNC would forfeit its earnest money deposit if it did not close on the property. On June 30, 2001, FNC closed on the sale of the property.
 

 In its third amended complaint, American asserted claims against the Board for negligent misrepresentation, fraud in the inducement, unjust enrichment and reformation of the purchase contract. American alleged that the Board made false statements in its bidding package and correspondence, that the Board was unjustly enriched by American’s purchase at a price that was significantly above market price, and that the contract should be reformed to reflect a proper purchase price because American mistakenly submitted its bid based on the Board’s misrepresentations. The Board answered the complaint, raised numerous affirmative defenses, and asserted a counterclaim for fraud in the inducement. The Board’s counterclaim asserted that FNC made misrepresentations to the Board after the Board refused to reduce the purchase price prior to closing, i.e., that FNC would irrevocably purchase the property pursuant to the contract terms.
 

 During discovery, the Board obtained, through a third party subpoena, the financial documents that FNC had submitted to Citibank in order to obtain financing. That production included the following documents for the years 1998-2004: FNC’s independent auditor’s reports, balance sheets, income statements, statements of cash flow, tax returns, and underlying information for its 2001 through 2008 budgets; and American’s balance sheets, income statements, statements of cash flow, and tax returns. The parties entered into a confidentiality agreement governing production of this information, which the trial court approved.
 

 In March 2009, the Board propounded a Sixth Request for Production to American, requesting, in pertinent part, the following items:
 

 1. FNC’s independent auditor’s reports for 2005-2007;
 

 2. FNC’s balance sheets, income statements and statements of cash flows for 2006 and 2007;
 

 3. FNC’s federal tax returns for 2005-2007;
 

 4. Budgets prepared by FNC for 2001 through 2008;
 

 5. American’s balance sheets, income statements and statements of cash flows for 2006 and 2007;
 

 6. American’s tax returns for 2001, 2002, 2005, 2006, and 2007; and
 

 
 *944
 
 7. All financial reports filed with the Department of Education for Title IV programs.
 

 American objected to the production and argued that the requested items — which sought post-2001 private, financial information — were overbroad, unduly burdensome, irrelevant to the asserted claims and not reasonably calculated to lead to admissible evidence. American further contended that because it was only seeking the difference between the amount paid for the property and the property’s value, the discovery requests violated its privacy rights and was in fact prejudgment discovery in aid of execution.
 

 The Board sought an order compelling production, arguing that the documents are relevant and reasonably calculated to lead to admissible evidence. In support of its motion, the Board attached the affidavit of its expert, opining that the discovery of this standard financial information was necessary to defend American’s claim for economic damages. American responded, asserting, inter alia, that it was only seeking out-of-pocket damages and its “financial performance indicators” are irrelevant to damages. Following a hearing, the trial court denied American’s objections, granted the Board’s motion to compel, in part, and ordered American to produce items 1-7 in the Board’s Sixth Request for Production. This petition ensued seeking to quash the order compelling productions of these documents.
 

 Certiorari review of a discovery order is proper when the order “departs from the essential requirements of law, and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal.”
 
 Allstate Ins. Co. v. Boecher,
 
 733 So.2d 993, 999 (Fla.1999) (quoting
 
 Allstate Ins. Co. v. Langston,
 
 655 So.2d 91, 94-95 (Fla.1995));
 
 see also Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1099 (Fla.1987). “Although not every erroneous discovery order creates certiorari jurisdiction, certiorari is the proper remedy for overbroad discovery orders ‘because once discovery is wrongfully granted, the complaining party is beyond relief.’ ”
 
 Redland Co. v. Atl. Civil, Inc.,
 
 961 So.2d 1004, 1006 (Fla. 3d DCA 2007) (quoting
 
 Caterpillar Indus., Inc. v. Keskes,
 
 639 So.2d 1129, 1129 n. 1 (Fla. 5th DCA 1994));
 
 Caribbean Sec. Sys., Inc. v. Sec. Control Sys., Inc.,
 
 486 So.2d 654, 655 (Fla. 3d DCA 1986);
 
 see also Stihl Se., Inc. v. Green Thumb Lawn & Garden Ctr. Newco, Inc.,
 
 974 So.2d 1200, 1201 (Fla. 5th DCA 2008);
 
 Royal Caribbean Cruises, Ltd. v. Doe,
 
 964 So.2d 713, 719 (Fla. 3d DCA 2007). The issue whether a discovery order is overbroad must be determined within the context of the facts of each case.
 
 See Computer Solutions, Inc. v. Gnaizda,
 
 633 So.2d 1100, 1101 (Fla. 3d DCA 1994).
 

 This case is similar to this Court’s decision in
 
 Redland.
 
 In
 
 Redland,
 
 this Court granted certiorari to quash an order compelling discovery of corporate financial documents, holding that the order was overbroad based on both the time frame of the requested documents and the wholesale turnover of documents without regard to the issues in the case.
 
 Id.
 
 at 1004. Here, the order under review is overbroad for the same two reasons.
 

 First, the order compels disclosure of corporate financial documents, dated from 2005 to 2007, that do not fall within the time frame of the subject matter of the case.
 
 [3]
 
 The claims asserted by American
 
 *945
 
 and the Board concern the bidding process for the purchase of the property, the failure to disclose the 1999 appraisal in the bidding package, the attempted renegotiation of the purchase, the 2001 appraisal, and the June 2001 closing on the sale of the property. There is no record basis justifying disclosure of financial documents for the requested time period when this action involves events which occurred prior to and during June of 2001. Accordingly, we conclude that the trial court’s order compelling production of the financial documents is unreasonably broad based on the time frame at issue.
 
 [4]
 

 See Id.
 
 at 1006;
 
 Tanchel v. Shoemaker,
 
 928 So.2d 440, 442 (Fla. 5th DCA 2006);
 
 Caribbean Sec. Sys., Inc.,
 
 486 So.2d at 655.
 

 Second, the order requires the disclosure of corporate financial documents without regard to the issues involved in this case. “Ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case.”
 
 Aspex Eyewear, Inc. v. Ross,
 
 778 So.2d 481, 481-82 (Fla. 4th DCA 2001);
 
 see also Capco Props., LLC. v. Monterey Gardens of Pinecrest Condo.,
 
 982 So.2d 1211, 1213-14 (Fla. 3d DCA 2008),
 
 review denied,
 
 1 So.3d 172 (Fla.2009).
 

 We agree with American’s contention that we should reject the Board’s argument that the documents are pertinent to the 2001 property appraisal, the issue of damages, and the Board’s defense of the reformation claim. While the Board correctly asserts that the 2001 appraisal applied the income capitalization approach, that valuation methodology did not address or consider American’s financial worth or financial performance indicators. Instead, the 2001 valuation was based on the income generated by comparable properties, not American’s income or the income of comparable businesses.
 
 See In re Biddiscombe Int’l, LLC,
 
 392 B.R. 909, 918 (Bankr.M.D.Fla.2008) (applying Florida law and discussing valuations of property and of a business).
 
 See generally
 
 Richard Dellinger,
 
 Business Valuation for the Practitioner: Identifying the Common Areas of Manipulation by the Valuator,
 
 84 Fla. Bar J. 59, 60 (Sept./Oct. 2010) (discussing income approach to valuation of a business).
 

 As to the damages issue, the record supports American’s position that it seeks out-of-pocket damages—the difference between the purchase price and the real or actual value of the property at the time of sale—rather than general economic or special damages. Documents concerning American’s financial worth and performance are not relevant to this issue.
 
 Cf. Frank Medina Trading Co. v. Blanco,
 
 553 So.2d 285, 286 (Fla. 3d DCA 1989) (holding that corporate tax returns are discoverable in an action to recover profits misdirected by an employee).
 

 Finally, the Board’s defense of American’s reformation claim does not support discovery of the-corporate financial documents. American alleged that its mistaken bid was made in reliance on the Board’s misrepresentations regarding the property’s assessed value, rather than
 
 *946
 
 American’s prospective use of the property. In response, the Board asserted that such mistake was a result of American’s considered business decision and that American has benefitted financially from this purchase, i.e., that American factored into the bid its best and highest use of the property. However, the documents evidence American’s financial performance for several years far removed from American’s 2001 business decision.
 
 [5]
 
 The factors underlying American’s decision were those American considered in 2001, and the requested financial documents have no relationship to its decision-making process in submitting the bid.
 

 Accordingly, we hold that the trial court’s order is also overbroad because it compels the wholesale production of financial documents that are not relevant to any issue in the case.
 
 See Banc of Am. Inv. Servs., Inc. v. Barnett,
 
 997 So.2d 1154, 1157-58 (Fla. 3d DCA 2008);
 
 Redland,
 
 961 So.2d at 1007;
 
 Compton & Assocs. v. Porlick, Poliquin, Samara, Inc.,
 
 662 So.2d 428, 429 (Fla. 3d DCA 1995);
 
 Caribbean Sec. Sys., Inc.,
 
 486 So.2d at 655.
 

 For the reasons stated, we grant the petition and quash the order compelling production of items 1-7 listed in the Board’s Sixth Request for Production.
 

 Certiorari granted.
 

 [1]
 

 . The Board is the entity responsible for the disposition of state-owned property. The Florida Department of Environmental Protection performs all duties and functions involved in the sale of the real property at issue. They are referred to collectively as the Board.
 

 [2]
 

 . FNC was the original successful bidder on the property. In June 2001, FNC assigned its right, title and interest to and under the contract for sale and purchase and deposit receipt to American, FNC's affiliate.
 

 [3]
 

 . Although the order compels discovery of documents from 2001 through 2008, the majority date from 2005 through 2007. Several items dated from 2001 through 2008 listed in
 
 *945
 
 the discovery request at issue were produced by Citibank, pursuant to an earlier subpoena, including the underlying information for FNC's budgets for 2001 through 2008, and American’s tax returns for 2001 and 2002.
 

 [4]
 

 . In addition, the ordered production of all financial reports filed with the Department of Education is patently overbroad as the order contains no time limitation as to these financial reports.
 
 See Stihl Se., Inc. v. Green Thumb Lawn & Garden Ctr. Newco, Inc.,
 
 974 So.2d 1200, 1201 (Fla. 5th DCA 2008);
 
 Life Care Ctrs. of Am. v. Reese,
 
 948 So.2d 830 (Fla. 5th DCA 2007).
 

 [5]
 

 . We note that the Board already has obtained corporate financial information for the three-year periods before and after the 2001 purchase.