LEWIS, J.
The Board of Trustees of the Internal Improvement Trust Fund seeks review of the decision of the Third District Court of Appeal in American Educational Enterprises, LLC v. Board of Trustees of the Internal Improvement Trust Fund, 45 So.3d 941 (Fla. 3d DCA 2010) (AEE), on the basis that it expressly and directly conflicts with decisions of this Court and other district courts of appeal with regard to the proper standard for common law certiorari relief. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
FACTS
The Board of Trustees of the Internal Improvement Trust Fund (the Board) is the Florida entity responsible for the disposition of state-owned property. See § 253.03, Fla. Stat. (2011).[1] American Educational Enterprises, LLC (American) is the assignee of Florida National College’s (FNC) right, title, and interest to and under a contract for the sale and purchase of state-owned property. This dispute arises from a discovery ruling in litigation concerning the purchase by American of certain state-owned real property from the Board.
In 1994, the State of Florida purchased the property at issue for $3,750,000 for use by the Department of Corrections. The property consisted of two lots with a building on one that was referred to as Glen-beigh Hospital, a treatment facility for substance abuse offenders. On April 18, 2001, the Board sent a bidding package to prospective purchasers, including FNC, regarding the sale of the property. Each bidding package disclosed that the property was being sold “as is” and at a minimum price of $3,750,000. In addition to the minimum price, the bidding package included information as to the tax-assessed value of the property ($4,642,063), its need for repairs, the buyer’s responsibility for financing, that a site inspection would be arranged upon request, and that a buyer “should independently verify all facts related to th[e] property.” On April 23, 2001, FNC submitted a bid of $4,025,000 as well as an earnest money deposit of $402,500. The Board accepted the bid and deposit from FNC, and the parties executed a purchase and sale contract for the amount of the bid.
To complete the purchase of the property, FNC sought financing from Citibank, which obtained an appraisal of the property. The appraisal obtained by Citibank concluded that the market value of the property was only $2,850,000. FNC also received a 1999 appraisal of the property that valued it at $3,275,000. The Board had not included the 1999 appraisal in the bidding package. FNC requested that the contract be modified to reflect the lower *453 appraisal value as the purchase price. The Board declined to renegotiate and stated that FNC would forfeit its earnest money deposit if it did not close on the property. On June 30, 2001, FNC closed on the sale of the property.
Thereafter, FNC assigned its rights under the contract to American. American, in turn, filed an action against the Board, claiming negligent misrepresentation, fraud in the inducement, unjust enrichment, and reformation of the contract. The Board filed an answer, asserted twenty-two affirmative defenses and a counterclaim for fraud in the inducement, and demanded attorneys’ fees. The Board contended that FNC misrepresented its position after the Board refused to reduce the purchase price prior to closing.
During discovery, the Board obtained financial documents that FNC had submitted to Citibank to obtain financing for the property. The documents covered the years 1998-2004, and specifically included FNC’s independent auditor’s reports, balance sheets, income statements, statements of cash flow, tax returns, and underlying information for its 2001 through 2008 budgets, in addition to American’s balance sheets, income statements, statements of cash flow, and tax returns. The Board and American entered into a Stipulated Confidentiality Agreement (the Agreement) that governed this information. The trial court approved the Agreement which was not limited to any specific time frame. The Agreement provided, in relevant part, that the financial information disclosed to the Board and provided by Citibank would be treated as confidential.
Relevant to this case, in March 2009, the Board propounded to American a request for the production of documents (the Request) seeking, in pertinent part, the following items:
1. FNC’s independent auditor’s reports for 2005-2007;
2. FNC’s balance sheets, income statements and statements of cash flow for 2006 and 2007;
3. FNC’s federal tax returns for 2005-2007;
4. Budgets prepared by FNC for 2001-2008;
5. American’s balance sheets, income statements, and statements of cash flows for 2006 and 2007;
6. American’s tax returns for 2001, 2002, and 2005-2007; and
7. All financial reports filed with the Department of Education for Title IV programs.
American objected to the request as overbroad, unduly burdensome, irrelevant to the asserted claims, and not reasonably calculated to lead to admissible evidence. The Board, in turn, moved to compel American to provide the requested documents. Along with its motion, the Board provided an affidavit from an expert appraiser who opined that the requested information was necessary to defend the claims of economic damages asserted by American. American, in response, contended that the request violated its privacy rights because it was only seeking the difference between the amount paid for the property and its value. Following a hearing, the trial court granted the Board’s motion to compel production and ordered American to produce items 1-7 of the Request.
American petitioned the Third District Court of Appeal for a writ of certiorari in which it requested that the court quash the order compelling production. The Third District quashed the order and held that certiorari relief was merited because the order of the trial court compelling production was overbroad. See AEE, 45 *454 So.3d at 946. The Third District specified that three elements caused the order to be overbroad: (1) it compelled disclosure of corporate financial documents that did not fall within the relevant time frame; (2) it required the disclosure of corporate financial documents without regard to the issues involved in the case; and (3) the Board’s defense to American’s claim to reform the contract did not support discovery of corporate financial documents far removed from the time of the purchase of the property. See id. at 944-46.
The Board petitioned this Court to review the decision below on the basis that the Third District’s reliance on over-breadth did not satisfy the standard for certiorari relief and was in express and direct conflict with the decisions of this Court in Allstate Insurance Company v. Boecher, 733 So.2d 993 (Fla.1999) and Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), superceded by statute on other grounds, § 768.72, Fla. Stat. (1989).
ANALYSIS
When determining whether an appellate court has properly invoked its certiorari jurisdiction to review a non-final order, this Court has explained that the following judicial policy informs the analysis:
“[Cjommon law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders.” Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla.1987); see also Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000); Jaye v. Royal Saxon, Inc., 720 So.2d 214, 214-15 (Fla.1998).... “A non-final order for which no appeal is provided by Rule 9.130 is reviewable by petition for certio-rari only in limited circumstances.” Martinr-Johnson, Inc., 509 So.2d at 1099; see also Brooks v. Owens, 97 So.2d 693, 695 (Fla.1957).... Limited certiorari review is based upon the rationale that “piecemeal review of nonfinal trial court orders will impede the orderly administration of justice and serve only to delay and harass.” Jaye, 720 So.2d at 215.
Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004) (emphasis supplied); see also Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086, 1092 (Fla.2010).
Here, we address whether the Third District erroneously granted a petition for a writ of certiorari and quashed a discovery order that compelled the production of financial information on the basis of over-breadth. We conclude that the Third District erred and applied an incorrect standard for certiorari, and we therefore quash the decision below.
The Florida Constitution provides the district courts of appeal with the discretionary jurisdiction to issue, inter alia, writs of certiorari. See art. V, § 4(b)(3), Fla. Const. Florida Rule of Appellate Procedure 9.130 authorizes the district courts to consider interlocutory appeals of certain non-final orders in specific circumstances. See Fla. R.App. P. 9.130(a)(4). A non-final order for which no appeal is provided by rule 9.130 may be reviewable by petition for a writ of certiorari, but only in very limited circumstances. The petitioning party must demonstrate that the contested order constitutes “(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.” Reeves, 889 So.2d at 822 (quoting Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002)); see also Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011); Brooks, 97 So.2d at 695. A finding that the petitioning party has “suffered an irreparable *455 harm that cannot be remedied on direct appeal” is a “condition precedent to invoking a district court’s certiorari jurisdiction.” Jaye, 720 So.2d at 215; see Williams, 62 So.3d at 1132 (“The last two elements are jurisdictional and must be analyzed before the court may even consider the first element.”); Martin-Johnson, Inc., 509 So.2d at 1099; McDonald v. Johnson, 83 So.3d 889, 891 (Fla. 2nd DCA 2012) (“This court considers the second and third prongs first because they are used to determine jurisdiction.”); Killinger v. Guardianship of Grable, 983 So.2d 30, 32 (Fla. 5th DCA 2008); Harley Shipbuilding Corp. v. Fast Cats Ferry Serv., LLC, 820 So.2d 445, 448 (Fla. 2d DCA 2002).
If the party seeking review does not demonstrate that it will suffer material injury of an irreparable nature, then an appellate court may not grant certiorari relief from a non-appealable non-final order. See Capital One, N.A. v. Forbes, 34 So.3d 209, 212 (Fla. 2d DCA 2010). Similarly, if the alleged harm can be remedied on appeal, the harm is not considered irreparable, and thus certiorari relief is not merited. See Pepsi Bottling Grp., Inc. v. Underwood, 8 So.3d 1260, 1262 (Fla. 1st DCA 2009).
In Marlin-Johnson, Inc., this Court expressed an unwillingness to “creat[e] a new category of non-final orders reviewable on interlocutory appeal.” 509 So.2d at 1099; id. at 1100 (“Even when the order departs from the essential requirements of the law, there are strong reasons militating against certiorari review.”). See also Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1200 (Fla. 4th DCA 2000) (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 531 (Fla.1995) (noting that “[a]n erroneous order compelling discovery when the cost and effort to do so is burdensome but not destructive is simply not ‘sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiora-ri,’ ” and thus declining to grant certiorari review of the disputed order)). Time and again, Florida courts have reiterated that certiorari relief is an “extremely rare” remedy that will be provided in “very few cases.” Martin-Johnson, Inc., 509 So.2d at 1098-99 (citing Taylor v. Bd. of Pub. Instruction of Duval Cnty., 131 So.2d 504, 506 (Fla. 1st DCA 1961)); see also Haridopolos v. Citizens for Strong Schs., Inc., 78 So.3d 605, 608 n. 2 (Fla. 1st DCA 2011); Anderson v. Vander Meiden ex rel. Duggan, 56 So.3d 830, 832 (Fla. 2d DCA 2011); Acevedo v. Doctors Hosp., Inc., 68 So.3d 949, 951 (Fla. 3d DCA 2011). In Martin-Johnson, Inc., this Court addressed whether the denial of a motion to dismiss or strike a claim for punitive damages constituted irreparable harm such that the appellate court should have granted certio-rari relief. See 509 So.2d at 1098. Although courts have since retreated from the specific holding of Martin-Johnson, Inc. with regard to punitive damage claims in light of the adoption of section 768.72, Florida Statutes (1989), the foundation of the case — that common law certiorari may be invoked only when a party will suffer irreparable harm that cannot be remedied on direct appeal — remains sound law. See Williams, 62 So.3d at 1134; Forbes, 34 So.3d at 212; Underwood, 8 So.3d at 1262; Hargrett v. Toyota Motor Sales U.S.A., Inc., 705 So.2d 1009, 1009 n. 1 (Fla. 4th DCA 1998).
Here, the parties do not dispute the extraordinary nature of certiorari or the standard an appellate court must apply when reviewing a petition for a writ of certiorari. Instead, the dispute focuses on whether the Third District applied the correct standard when it evaluated American’s petition. American contends that the *456 opinion of the Third District evidences that the appellate court concluded that American satisfied the standard of irreparable harm ipso facto by analogizing this case to another Third District case, Redland Company, Inc. v. Atlantic Civil, Inc., 961 So.2d 1004 (Fla. 3d DCA 2007). The Board, however, disagrees, and contends that the decision of the Third District should be quashed because the actual opinion and decision, which does not discuss irreparable harm, demonstrates that the court did not apply the correct standard.
In Redland, the Third District granted a petition for writ of certiorari to quash an order that compelled production of corporate financial documents. See 961 So.2d at 1005. The Redland court explained that it granted the petition because the trial court order “depart[ed] from the essential requirements of the law by requiring overbroad discovery that [would] cause material injury to Redland and leave them with no adequate remedy on appeal.” Id. at 1006 (emphasis supplied). The Red-land court noted that “[although not every erroneous discovery order creates cer-tiorari jurisdiction, certiorari is the proper remedy for overbroad discovery orders ‘because once discovery is wrongfully granted, the complaining party is beyond relief.’ ” Id. (quoting Caterpillar Indus., Inc. v. Keskes, 639 So.2d 1129, 1129 n. 1 (Fla. 5th DCA 1994) (emphasis supplied)). In Redland, the Third District held the order was overbroad because it required the production of documents spanning an “unreasonably broad” time frame “without regard to the issues framed by the alleged breaches” of the agreement. See id. at 1006-07. In so holding, the Redland opinion replaced the requirement that a reviewing court determines whether a proposed order will cause material harm of an irreparable nature to the party petitioning for certiorari relief with simply allowing the petitioning party to establish that the proposed order was overbroad. This different standard, however, is one that this Court has previously confronted and expressly rejected. Consequently, we expressly disapprove Redland here as well. Overbreadth is not a proper basis for cer-tiorari review of discovery orders.
This Court and other district courts of appeal have restated with frequency that overbreadth is not sufficient, nor is it a basis, for certiorari relief. “Certiorari jurisdiction does not lie to review every erroneous discovery order,” see Katzman v. Rediron Fabrication, Inc., 76 So.3d 1060, 1062 (Fla. 4th DCA 2011) (citing Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995)), and overbreadth alone is not a basis on which such jurisdiction will be granted. In Katzman, the Fourth District added that appellate courts should not provide certiorari review for orders that deny “a party’s over-breadth or burden-someness objections to discovery.” See 76 So.3d at 1062; see also Megaflight, Inc. v. Lamb, 749 So.2d 594, 595 (Fla. 5th DCA 2000) (“[W]e agree with those who suggest that erroneous orders that require over-broad discovery of nonprivileged documents should be subjected to certiorari review more cautiously than erroneous orders requiring discovery of confidential or privileged matters.”). Similarly, in Killinger, 983 So.2d at 32, the Fifth District commented that “[w]hile certiorari may be used to review pre-trial orders compelling discovery, it is generally not appropriate simply based on an argument that the discovery request is overbroad, irrelevant, or burdensome.” See also Topp Telecom, 763 So.2d at 1200 (“It seems clear to us that the mere fact of unwarranted effort and expense is not, by itself, synonymous with a ‘departure from the essential requirements of law1 [e.s.] for which immediate review is necessary.”).
*457 In Allstate Insurance Co. v. Langston, we held that “irrelevant discovery alone is not a basis for granting certiorari,” and disapproved other cases to the extent that they could “be interpreted as automatically equating irrelevant discovery requests with irreparable harm,” even though cer-tiorari may be relied upon at times to limit abusive discovery practices. See 655 So.2d at 94-95. In Langston, we recognized that although irrelevant materials sought in a discovery request do not necessarily cause irreparable harm, a litigant is not entitled carte blanche to irrelevant discovery. See id. at 95. Based upon this recognition, we quashed the decision of the Fourth District to the “extent that it permitted] discovery even when it ha[d] been affirmatively established that such discovery [wa]s neither relevant nor [would] lead to the discovery of relevant information." Id. (emphasis supplied).
In Langston, we provided the following insight with regard to when a discovery request may cause material injury, thus satisfying the requirements for certiorari jurisdiction:
Discovery in civil cases must be relevant to the subject matter of the case and must be admissible or reasonably calculated to lead to admissible evidence. Brooks, 97 So.2d at 699; see also Amente v. Newman, 653 So.2d 1030 (Fla.1995) (concept of relevancy is broader in discovery context than in trial context, and party may be permitted to discover relevant evidence that would be inadmissible at trial if it may lead to discovery of relevant evidence); Krypton, 629 So.2d at 854 (“It is axiomatic that information sought in discovery must relate to the issues involved in the litigation, as framed in all pleadings.”); Fla. R. Civ. P. 1.280(b)(1) (discovery must be relevant to the subject matter of the pending action).
This Court has held that review by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal. Martin-Johnson, 509 So.2d at 1099; see also Brooks; Kilgore [v. Bird, 149 Fla. 570, 6 So.2d 541 (1942) ].
Discovery of certain kinds of information “may reasonably cause material injury of an irreparable nature.” Martin-Johnson, 509 So.2d at 1100. This includes “cat out of the bag” material that could be used to injure another person or party outside the context of the litigation, and material protected by privilege, trade secrets, work product, or involving a confidential informant may cause such injury if disclosed. Id.
655 So.2d at 94 (footnote omitted).
In keeping with the decisions of this Court and numerous other district courts of appeal addressing the proper standard for certiorari relief, we quash the decision below which held that relief was appropriate solely because the discovery order at issue was overbroad. In holding that “cer-tiorari is the proper remedy for overbroad discovery orders” because overbroad orders leave the complaining party “ ‘beyond relief,’” AEE, 45 So.3d at 944 (quoting Redland, 961 So.2d at 1006), the Third District improperly supplanted and expanded the scope of certiorari jurisdiction by replacing the requirement of establishing irreparable harm with a requirement that the requesting party merely demonstrate overbreadth. This is an incorrect and improper alteration of the standard for certiorari jurisdiction. Overbreadth is not a basis for this relief.

Discovery of Financial Information

Generally, private individual financial information is not discoverable *458 when there is no financial issue pending in the case to which the discovery applies. See Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189, 194 (Fla.2003); Aspex Eyewear, Inc. v. Ross, 778 So.2d 481, 481-82 (Fla. 4th DCA 2001) (“Ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case.”). However, “where materials sought by a party ‘would appear to be relevant to the subject matter of the pending action,’ the information is fully discoverable.” See Friedman, 863 So.2d at 194 (quoting Epstein v. Epstein, 519 So.2d 1042, 1043 (Fla. 3d DCA 1988)).
The concept of relevancy has a much wider application in the discovery context than in the context of admissible evidence at trial. See Amente v. Newman, 653 So.2d 1030, 1032 (Fla.1995). A party’s financial information, if relevant to the disputed issues of the underlying action, is not excepted from discovery under this rule of relevancy, and courts will compel production of financial documents and information if shown to be relevant to a pending action. See Friedman, 863 So.2d at 194; see also Aspex Eyewear, 778 So.2d at 481-82. The information sought here is relevant and it is discoverable. We note that whether this information may be admissible at trial is an issue that we neither need nor endeavor to address. The value of real estate is approached in many ways including an income approach. Admittedly, the underlying real estate is being used to produce income. The financial information may at the very least lead to admissible evidence.
In the Request, the Board sought various financial documents — auditor reports, balance sheets, income statements, cash flows, federal tax returns, budgets, and other financial reports — from American from 2001 to 2008. The disputed real estate purchase closed during the course of 2001. Financial documents from 1998 to 2004 were provided to the Board in previous discovery requests through a third party subpoena. FNC had submitted these documents to Citibank when it sought financing for the real estate purchase.
The Board asserts that it seeks this additional financial information to corroborate its claim that the bid American submitted for the property was calculated based, at least in part, on economic projections regarding the value of the property. More specifically, the Board contends that the information in the Request is relevant because:
(1) American has invoked the equitable jurisdiction of the trial court by suing the Board for reformation of the contract. The Board alleges that American’s bid was the result of a considered business decision. The Board contends that American factored into its valuation of the property its unique, highest, and best use, determining budgets and projected profits expected from locating its business upon this highly visible property with a ready market for students. The financial information ordered disclosed is reasonably calculated to lead to admissible evidence such as the value of the property to American based upon projected profits; expert opinion as to the validity of the budgets used by American at the time of the purchase; American’s intention to outbid another prospective purchaser based upon financial projections contained in the financial information ordered disclosed; and an expert valuation of the property employing an income method or other appraisal method which employs all financial information available up to the time of trial.
(2) The financial information at issue is also discoverable because it could rea *459 sonably be employed to impeach any attempt by American to claim that it would be inequitable not to reduce the purchase price based upon alleged losses.
Whether this information may be ultimately admitted into evidence need not be resolved here. Rather, we address whether these documents may lead to admissible evidence relevant to resolving the dispute at hand to determine the appropriateness of the trial court’s order mandating disclosure. Financial projections and information here are interwoven into an assessment of property value and are discoverable. The financial information sought in the disclosure order may lead to evidence to resolve the underlying action based upon the parties’ contentions regarding the value of the property as compared to the purchase price.
The Board has admitted, conceded, and agreed that the requested documents from American remain confidential in this case as is the case with earlier documents. The rules of discovery provide sufficient means to limit the use and dissemination of discoverable information via protective orders, and it is the responsibility of the trial court to decide whether to employ those means in this case. See Martin-Johnson, Inc., 509 So.2d at 1100.
Here, the order compels the production of relevant financial information and does not result in irreparable harm. Thus, discovery is permissible and certiorari relief by the Third District was not merited.
CONCLUSION
The basis stated for certiorari relief in the decision below is incorrect and in express conflict with numerous Florida decisions. Consequently, we quash the decision of the Third District in AEE. We disapprove of other decisions that have provided certiorari relief on the basis of overbreadth including, but not limited to, Stihl Southeast, Inc. v. Green Thumb Lawn & Garden Center Newco, Inc., 974 So.2d 1200 (Fla. 5th DCA 2008); Caterpillar Industrial Inc. v. Keskes, 639 So.2d 1129 (Fla. 5th DCA 1994); First City Developments of Florida v. Hallmark of Hollywood Condominium Assoc., Inc., 545 So.2d 502 (Fla. 4th DCA 1989); Redland Co. v. Atlantic Civil, Inc., 961 So.2d 1004 (Fla. 3d DCA 2007); Royal Caribbean Cruises, Ltd. v. Doe, 964 So.2d 713 (Fla. 3d DCA 2007); and Caribbean Security Systems, Inc. v. Security Control Systems, Inc., 486 So.2d 654 (Fla. 3d DCA 1986). Furthermore, because the requested information is relevant to the disputed issues, and American has not demonstrated irreparable harm through its disclosure, we conclude that the information is discoverable, and therefore the petition for certio-rari relief should have been denied.
It is so ordered.
POLSTON, C.J., and PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.

. Although the Board is the entity responsible for the disposition of the property at issue, the Florida Department of Environmental Protection (the FDEP) performs all duties involved in the disposition and sale of state property. See § 253.002, Fla. Stat. (2011) (stating that the FDEP “shall perform all staff duties and functions related to the acquisition, administration, and disposition of state lands, title to which is or will be vested in the Board of Trustees of the Internal Improvement Trust Fund”). References to the Board also extend to the FDEP.