NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GEORGE GOMILLION, DOC #R44747,   )
                           )
        Petitioner,          )
                           )
v.                           )     Case No. 2D18-1640
                           )
STATE OF FLORIDA,        )
                           )
        Respondent.      )
_____)

Opinion filed March 20, 2019.

Petition for Writ of Certiorari to the Circuit
Court for Pinellas County; Nancy Moate
Ley, Judge.

Ron Smith, Largo, for Petitioner.

Ashley Moody, Attorney General,
Tallahassee, and Michael Schaub,
Assistant Attorney General, Tampa, for
Respondent.


SALARIO, Judge.

       George Gomillion has filed a petition for a writ of certiorari asking us to

quash an order denying his objection to the State's subpoena of his toxicology records

for purposes of his criminal prosecution.  He asserts that the records are protected as

private by article I, section 23 of the Florida Constitution.  We agree that the State failed

to prove that the toxicology records are relevant to an ongoing criminal investigation—in

this case, the only way in which it could overcome Mr. Gomillion's constitutional privacy right—which warrants relief. We grant the petition and quash the order as it relates to that portion of the subpoena seeking the toxicology records.[1]

The underlying facts are as follows. On February 23, 2017, a vehicle rear-ended a taxi on U.S. 19 in Pinellas County. The taxi driver and her passenger were seriously injured. The driver of the rear vehicle fled. Nobody saw the wreck happen. Someone did, however, see a man fitting Mr. Gomillion's description running from the scene. With a dog's help, Pinellas County Sheriff's deputies found Mr. Gomillion hiding under a trailer not too far away. DNA was recovered from the rear vehicle's airbag, which had deployed during the accident, and it was a match to Mr. Gomillion.

On March 13, 2017, the State filed an information charging Mr. Gomillion with one count of leaving the scene of an accident, see § 316.027(2)(a), Fla. Stat. (2016), and one count of carelessly or negligently causing serious bodily injury while driving on a canceled, suspended, or revoked license, see § 322.34(6)(b), Fla. Stat. (2016). As the case headed toward trial, the State notified Mr. Gomillion that it planned to subpoena medical records regarding treatment he received at Bayfront Medical Center after the crash. The proposed subpoena requested:

> ABSTRACT VERSION OF MEDICAL RECORDS OF
> DIAGNOSIS AND TREATMENT OF PATIENT GEORGE
> GOMILLLION . . . TO INCLUDE BUT NOT LIMITED TO:
> BLOOD ANALYSIS, TOXICOLOGY ANALYSIS INCLUDING
> THE NAMES OF ALL TREATING PHYSICIANS AND
> NURSES AS WELL AS THE INDIVIDUALS THAT TOOK

---

[1]Mr. Gomillion also challenges the trial court's order insofar as it denies his objection to a portion of the subpoena that seeks diagnostic and treatment records. Because the State sufficiently demonstrated that those records are relevant to the disputed issue of identity, among other things, we take no issue with that portion of the trial court's order. The State may seek to subpoena those records, and Mr. Gomillion's petition is otherwise denied as it relates thereto.

- 2 -

> THE BLOOD/URINE AND TESTED THE BLOOD/URINE
> SAMPLES . . . . [and] THE OBSERVATIONS AND NOTES
> OF ALL TREATING PHYSICIANS AND NURSES.

Mr. Gomillion filed an objection to the subpoena in which he argued that it impinged on his right to privacy under article I, section 23 because his toxicology records were not relevant to an ongoing criminal investigation.

The trial court conducted a hearing on Mr. Gomillion's objection, at which the State submitted two pieces of evidence without objection: (1) the arrest affidavit executed by one of the arresting deputies and (2) a recording of a telephone call Mr. Gomillion placed from jail to a man named Demetrius Gray. The State contended that portions of the recorded call would provide a reasonable basis to expect that the toxicology records would reveal evidence that Mr. Gomillion was under the influence of drugs or alcohol at the time of the crash:

> Mr. Gomillion: I'm trying to figure that out cause I got -- all I got is traffic violations, leaving the scene --
>
> Mr. Gray:  I know. Okay.
>
> Mr. Gomillion:  -- of a crash, and uh, --and, uh, driving while my license was suspended.  That's it, but then they got this VOP on me, too.
>
> Mr. Gray: Yeah.
>
> Mr. Gomillion:  So, um, but the other thing --
>
> Mr. Gray:  You know.  <u>So, they ain't hit you with no DUI? No shit like that</u>?
>
> Mr. Gomillion:  <u>Nu-uh. Nah. Nah. Nah</u>.  But what I'm trying to --
>
> Mr. Gray:  Alright, bitch, you straight now.
>
>     . . . .

Mr. Gray: Don't even be talking like that, bro. Don't even get on that. We ain't even get on that conversation right now. That's not even how we fixing to talk. It's looking good. It ain't even as bad as I thought. I thought it would be, you know -- you know, DUI, all of that shit --

Mr. Gomillion: The whole shebang.

Mr. Gray: --which I know you ain't drinking. Yeah. So, this is already looking better, you see? (Unintelligible). Know what I'm saying?

Mr. Gomillion: Yeah. Yeah. It's just the driving and -- and -- and, uh, leaving the scene.

(Emphasis added.) The State claimed that evidence of Mr. Gomillion having been intoxicated at the time of the crash would be relevant for impeachment purposes were he to take the stand at trial and testify that he was not the driver.

The trial court overruled the objection and allowed the subpoena. It stated that it did not believe the toxicology records were relevant to the possibility of charging Mr. Gomillion with another offense—presumably driving under the influence—but that they were relevant for purposes of impeaching Mr. Gomillion at trial. The trial court acknowledged the very real possibility that Mr. Gomillion would decline to testify at all, but it reasoned that in the event he did testify, the toxicology records, if they showed that Mr. Gomillion was impaired, would go to his ability to recall and relate the events leading up to the wreck and his alleged fleeing the scene. Mr. Gomillion now seeks relief by way of certiorari from the order denying his objection.[2]

We may grant a writ of certiorari when presented with a trial court order that "departs from the essential requirements of law, causing material injury to a

_____

[2]The trial court stayed the issuance of the subpoena pending the outcome of these proceedings.

- 4 -

petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995). The requirements of material injury and the absence of an adequate appellate remedy are jurisdictional, so we must deal with them before delving into whether the trial court's order departed from the essential requirements of law. See Montanez v. State, 24 So. 3d 799, 801 (Fla. 2d DCA 2010).

It has long been recognized that a trial court order permitting discovery of information that is privileged or otherwise legally protected as private causes an immediate injury that success in a postjudgment appeal is unable to fix. See Langston, 655 So. 2d at 94. The idea is that this is "cat out of the bag" information; once it is disclosed, there is no adequate way to repair the damage to the legally-recognized privilege or privacy interest of the party injured by the disclosure. See Allen v. State Farm Fla. Ins. Co., 198 So. 3d 871, 873 (Fla. 2d DCA 2016) (holding that the disclosure of personal financial information constitutes irreparable harm); Cordis Corp. v. O'Shea, 988 So. 2d 1163, 1166 (Fla. 4th DCA 2008) ("Once the confidential information is released . . . the harm, or invasion of the privilege, privacy[,] or trade secret interest, has occurred. It cannot be remedied by final appeal."). Here, Mr. Gomillion asserts a privacy interest under article I, section 23 of the Florida Constitution in the toxicology records the State seeks to subpoena. If the trial court's order allowing the disclosure of those records in fact departs from the essential requirements of law, Mr. Gomillion will have sustained an immediate injury (the impairment of his legally-recognized privacy interest) that a postjudgment appeal cannot remedy (an appeal cannot fix the violation of his privacy rights occasioned by the disclosure). Our certiorari jurisdiction is thus properly invoked in this case. See, e.g., Faber v. State, 157 So. 3d 429, 431 (Fla. 2d

- 5 -

DCA 2015) (granting a certiorari petition where the trial court allowed disclosure of medical records in response to the State's request); Tyson v. State, 114 So. 3d 443, 444-45 (Fla. 5th DCA 2013) ("Certiorari is the appropriate vehicle to review an interlocutory order requiring the production of confidential medical records.").

Turning to whether the trial court's order departs from the essential requirements of law, we begin, as Mr. Gomillion does, with the recognition that in Florida, medical records are protected as private by our state constitution. Article I, section 23's guarantee that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life" has been held to protect an individual privacy interest in medical records.[3] See State v. Rivers, 787 So. 2d 952, 953 (Fla. 2d DCA 2001) (citing Hunter v. State, 639 So. 2d 72, 74 (Fla. 5th DCA 1994)). To overcome a person's right to keep his or her medical records private, the State is obligated to prove that it has a compelling interest in having the records disclosed. Id. at 953; see also Guardado v. State, 61 So. 3d 1210, 1213 (Fla. 4th DCA 2011). One way in which the State can carry that burden—and the only way it attempted to do so in this case—is to prove that the medical records are relevant to an ongoing criminal investigation. See Faber, 157 So. 3d at 431; Rivers, 787 So. 2d at 953. Our court and others have recognized that a trial court departs from the essential requirements of law when it allows disclosure of medical records absent such proof (or proof of some other compelling interest). See Faber, 157 So. 3d at 431 (holding that the trial court departed from the essential requirements of law where it authorized a subpoena for medical

---

[3]There are also statutes that regulate the disclosure of confidential information in medical records, and those are also discussed in the petition. See §§ 395.3025, 456.057, Fla. Stat. (2016). Because it is the constitutional protection that drives the result in this case, however, we do not address them further.

records where "the State presented an insufficient nexus to establish the relevance" of the records); Tyson, 114 So. 3d at 445 (granting certiorari relief where "the State did not present evidence to establish relevancy").

As our court framed it in Rivers, the dispositive question is whether the State has presented a "reasonable founded suspicion" that the records it seeks are relevant to an ongoing investigation. 787 So. 2d at 953; see also State v. Rutherford, 707 So. 2d 1129, 1131 (Fla. 4th DCA 1997) ("A compelling state interest in this type of case is established by showing that the police have a reasonable founded suspicion that protected materials contain information relevant to an ongoing criminal investigation."), disapproved on other grounds, State v. Johnson, 814 So. 2d 390, 394 (Fla. 2002). Although the cases speak of an "ongoing criminal investigation"—which might imply that we are talking about preprosecution investigative work—the State's burden is satisfied if it shows a reasonable, founded suspicion that the materials are relevant to ongoing criminal litigation as well. See, e.g., Rivers, 787 So. 2d at 953-54 (holding that the State's burden was satisfied when the materials were "directly related" to the offense with which the defendant was charged). Applying that test, the cases have required that the State show a "nexus" between the medical records the State seeks and some material issue in the case by (1) identifying some theory that reasonably makes the records relevant and (2) producing some evidence that makes it reasonable to expect that the records will produce evidence that supports the theory. See Faber, 157 So. 3d at 431 (requiring that the State demonstrate a "nexus" between the records and some relevant issue); McAlevy v. State, 947 So. 2d 525, 529 (Fla. 4th DCA 2006) ("[T]he [S]tate must present evidence and argument to show the nexus between the medical records sought and a pending criminal investigation."); Cerroni v.

State, 823 So. 2d 150, 152 (Fla. 5th DCA 2002) ("[T]he [S]tate has the obligation and burden to demonstrate relevancy, via evidence, before the subpoena may issue." (citing Hunter, 639 So. 2d at 74)).

In the trial court, the State did not argue or prove that there was some issue in an ongoing investigation into the crash that led to the offenses with which Mr. Gomillion was charged to which the toxicology records were material. Nor did it argue or prove that Mr. Gomillion's toxicology records were relevant to any element of any offense with which Mr. Gomillion was charged or to any defense Mr. Gomillion might present to those charges.[4] The absence of any such assertion distinguishes this case

---

[4]That aspect of the case is a bit puzzling. To prove the charged offense of carelessly or negligently operating a motor vehicle while causing death or serious bodily injury under section 322.34(6)(b), the State is required to prove that Mr. Gomillion operated the vehicle in a careless or negligent manner. See Fla. Std. Jury Instr. (Crim.) 28.12 (stating the element of carelessness or negligence and defining those terms). Mr. Gomillion's intoxication (if any) seems potentially probative of whether he drove negligently or carelessly, which might make his toxicology records relevant. Resolving that issue, however, would require us to resolve questions concerning whether, upon what showing, and to what extent a defendant's toxicology records become relevant when the State has charged an offense that has carelessness or negligence as an element (e.g., Is the mere fact that the State has charged such an offense enough and, if not, what showing is required?). Because the State did not factually develop these issues in the trial court and did not legally develop these issues here, we decline to do so. See Powell v. State, 120 So. 3d 577, 591 (Fla. 1st DCA 2013) ("The tipsy coachman doctrine allows appellate courts to consider grounds for affirmance if the record supports doing so; it does not compel them to overlook deficient records and blaze new trails that even the tipsiest of coachmen could not have traversed."); E.K. v. Dep't of Children & Fam. Servs., 948 So. 2d 54, 57 (Fla. 3d DCA 2007) (explaining that the "[t]ipsy [c]oachman" doctrine "does not rescue parties from their own inattention to important legal detail").

The State does argue—for the first time in this court—that the toxicology records are relevant to establish a motive for Mr. Gomillion to leave the scene (i.e., that he was intoxicated) for purposes of proving the charged offense of leaving the scene of an accident. But the State has not shown that motive is at all relevant in this case. Stripped to essentials, the relevant question on the count for leaving the scene is whether Mr. Gomillion knowingly, intentionally, and purposely left the scene of an accident. See Fla. Std. Jury Instr. (Crim.) 28.4. On the facts in the appendices filed by the parties, there is no dispute that someone did that; the only question is whether that

- 8 -

from our decision in Rivers and the Fourth District's decision in McAlevy, upon which the State primarily relies. In each of those cases, the State sought to subpoena toxicology records in the course of a prosecution for driving under the influence. Rivers, 787 So. 2d at 953; McAlvey, 947 So. 2d at 528. To the extent the toxicology records in those cases revealed drugs or alcohol in the defendant's blood, the records would have been directly relevant to a substantive issue in the case. In contrast here, the State advanced no theory that made the medical records relevant to any substantive issue in the case. See, e.g., Barahona v. State, 172 So. 3d 470, 473 (Fla. 3d DCA 2015) (holding that defendant in a murder trial was not entitled to subpoena her codefendant's medical records where she "has not alleged, much less demonstrated, how any of Mr. Barahona's hospital records would relate to the separate case against her"); Tyson, 114 So. 3d at 445 (quashing medical record subpoena where the State failed to offer evidence that the defendant's medical records "relate[d] to any element of the charged offense").

That leaves us with the reason the trial court gave for overruling Mr. Gomillion's objection and allowing the subpoena—namely, that the toxicology records might help impeach Mr. Gomillion at trial. The parties do not dispute that relevance for an impeachment purpose may be a sufficient basis to access medical records protected by article I, section 23. But see Graham v. Dacheikh, 991 So. 2d 932, 935 (Fla. 2d DCA 2008) (quashing order authorizing discovery of nonparty medical records in a personal injury case based on lack of notice and absence of privacy protections and considering

---

someone was Mr. Gomillion. Furthermore, as explained in the text, even if the State had identified a theory of relevance, it presented no evidence making it reasonable to expect that the toxicology records would contain information supporting the theory.

that the records were sought for impeachment purposes rather than substantive evidence). Accordingly, we assume without deciding that a reasonable, founded suspicion that medical records will yield evidence with which the State may impeach a criminal defendant—in the uncertain event he or she testifies—is sufficient to override the defendant's constitutional right of privacy in those medical records. The rules applicable in cases where medical records are alleged to be relevant to a substantive issue, as discussed above, dictate that the State must at a minimum establish a nexus between the records and the ongoing criminal litigation by identifying a reasonable theory of impeachment and presenting evidence that makes it reasonable to expect that the records will produce evidence that supports the theory.

Here, the State has identified a reasonable theory of impeachment—that the records, if they establish that Mr. Gomillion was under the influence of drugs or alcohol, might yield evidence that goes to his ability to observe, remember, or recount the events of the evening in question. See § 90.608(4), Fla. Stat. (2016); Edwards v. State, 548 So. 2d 656, 658 (Fla. 1989) (holding that evidence of drug use is admissible if "it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony"). But the State presented no evidence making it reasonable to believe that the toxicology records will turn up evidence that Mr. Gomillion was under the influence of drugs or alcohol. The fact that he is alleged to have left the scene of an accident, standing alone, is insufficient to make that showing, as there are myriad reasons unrelated to drug or alcohol use someone might do so (e.g., driving with a canceled, suspended, or revoked license; concern about liability; or involvement in other questionable activity). Cf. Guardado, 61 So. 3d at 1214 (rejecting the argument that a crash involving death always makes

toxicology records relevant).  The arrest affidavit adds nothing because, unlike the arrest affidavits in cases like Hunter and McAlvey, the arrest affidavit here contains no indication that the arresting deputies made observations of Mr. Gomillion's smell, appearance, or demeanor (or found anything else) consistent with or that led them to suspect drug or alcohol use.  And finally, the recorded call between Mr. Gomillion and Mr. Gray provides no reasonable basis to expect the medical records to turn up information about drug or alcohol use: It was Mr. Gray, not Mr. Gomillion, who brought up the subject of drugs or alcohol, and only to ask if Mr. Gomillion was facing a DUI charge.  Mr. Gomillion never said anything from which one might reasonably infer that he was under the influence of drugs or alcohol at the time of the accident, and the State presented nothing to suggest that Mr. Gray was in a position to know that Mr. Gomillion was under the influence of drugs or alcohol at the time of the accident.  Ultimately, no part of the State's evidence suggests a reasonable basis to expect that Mr. Gomillion was under the influence of drugs or alcohol when the crash occurred.  With no such evidence, the State could not establish a nexus between the toxicology records and its case against Mr. Gomillion.

Because the State failed to show that nexus, there was no compelling state interest upon which the trial court could rely to override Mr. Gomillion's constitutional right to privacy with respect to his toxicology records.  The trial court's order departs from the essential requirements of law to the extent that it allows the State to subpoena those records.  For that reason, we grant the petition and quash the order to that extent.  We note that nothing about our disposition prevents the State from seeking to subpoena such medical records where it has shown or can in the future show the requisite nexus.

Petition granted in part; order quashed in part.


KELLY and LUCAS, JJ., Concur.