NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


LADIMIR LEKA,                                    )
                                                 )
              Petitioner,                         )
                                                 )
v.                                               )      Case No. 2D18-5095
                                                 )
STATE OF FLORIDA,                                )
                                                 )
              Respondent.                         )
                                                 )
_____          )

Opinion filed October 2, 2019.

Petition for Writ of Certiorari to the Circuit
Court for Pinellas County; Anthony
Rondolino, Judge.

Leslie M. Sammis of Sammis Law Firm,
P.A., Tampa, for Petitioner.

Ashley Moody, Attorney General,
Tallahassee, and Blain A. Goff, Assistant
Attorney General, Tampa, for Respondent.


BLACK, Judge.

              Ladimir Leka seeks certiorari review of the trial court's order granting the

State's request to subpoena his medical records.  We grant the petition and quash the

November 28, 2018, "Order Granting Motion to Request Subpoena Duces Tecum for Medical Records of Ladimir Leka."

In August 2018, the State filed a "Motion to Request Subpoena Duces Tecum for Medical Records of Ladimir Leka." Because there was no pending criminal action against Leka, the motion was docketed as an "order to show cause" case. In the motion, the State cited sections 395.3025 and 456.057, Florida Statutes (2018), as the bases for the request for Leka's medical records. The State acknowledged the privacy of patient medical records but contended that the right to privacy may be overcome where the State establishes that "there is a reasonable founded suspicion that the material contain[s] information relevant to an ongoing criminal investigation." The motion provided that the State had notified Leka that a subpoena for his medical records would be issued unless he objected, see §§ 395.3025(4)(d), 456.057(7)(a)(3); Leka then objected, necessitating a hearing.

In September 2018, Leka filed a "Notice of Objection" in the show cause case. Leka noted that the State's motion referenced medical records, Bayfront Medical Center, "a criminal investigation," and named a St. Petersburg Police Department officer but that it did not indicate a time, date, or place of any alleged conduct by Leka that would give rise to a criminal investigation; the nature of the criminal allegation; which medical records were sought to be produced; and how any alleged criminal action related to Leka's medical records. The notice also provided that Leka had not been arrested or cited for any offense. Leka contended that the notice provided by the State was legally insufficient.

The initial hearing on the State's motion was continued after Leka successfully argued that he had not received a copy of the proposed subpoena. At the subsequent hearing, Leka again objected to moving forward because he had yet to receive a copy of the proposed subpoena. The hearing transcript indicates that counsel was then provided with the proposed subpoena, and she objected to it as overly broad, requesting "all medical records and treatment," including blood analysis, toxicology analysis, and physicians' names, for a specific date but without limitation, explanation, or relevancy. The specific date was not noted on the record, and the proposed subpoena was not filed with the court or admitted into evidence. Counsel further argued that she was objecting to the issuance of the subpoena for all of the reasons stated in the notice, including that the State had no compelling interest in Leka's medical records.

The State called Officer Alli to testify. The officer testified that he was employed by the St. Petersburg Police Department. As part of the DUI unit he was called to a traffic accident involving two vehicles on December 9, 2017. Over a hearsay objection, Officer Alli testified that while he was en route to the scene, the investigating officer on scene advised Officer Alli that "the suspected driver" of one of the vehicles was being transported to Bayfront Medical Center. The same officer also advised Officer Alli that he had "detected signs of impairment" in the suspected driver. Officer Alli then proceeded to Bayfront Medical Center.

Upon arrival, Officer Alli saw that "the Defendant was in one of the trauma rooms." At no time did Officer Alli identify Leka as the man he had seen in the trauma room or as "the Defendant" to whom he referred. There was no testimony as to how Officer Alli knew that the person he saw was the suspected driver of the vehicle, and at

no time was Leka identified as the suspected driver. Over objection, Officer Alli testified that medical personnel informed him that "the Defendant was physically resisting them and yelling 'No blood for police, no blood for police,' as soon as they attempted to help him" and that subsequently the man had been sedated. Officer Alli testified that he had been "close enough to the Defendant [to see] his eyes were slightly open" and notice "they were bloodshot red and watery still"; the officer also "detect[ed] the odor of alcoholic beverage" on the man's breath. Over multiple objections, including hearsay and violation of section 316.1933(2)(a), Florida Statutes (2018), Officer Alli testified that medical personnel advised him that "the Defendant" had a blood alcohol level of .423. Officer Alli further testified that upon speaking with an unidentified officer at the scene of the traffic accident, he had been told that "the Defendant's girlfriend" was a passenger in the vehicle that "the Defendant was driving." The officer confirmed that no citations had been issued.

There was no additional testimony or evidence submitted to the court. No probable cause affidavit or police or crash report was discussed or introduced into evidence. During arguments, the court noted that there was "very, very limited presentation that [was] un-objected to firsthand knowledge of the witness" such that "the officer's personal knowledge facts" did not create the necessary nexus that the State was required to establish. The court went so far as to say that the State was "dead in the water if the hearsay is excluded." Taking the motion under advisement, the court requested submissions from both sides as to whether it could consider hearsay in determining whether the State had met its burden. On November 28, 2018, the court entered its order granting the motion for a subpoena duces tecum, noting that it had

considered the motion, objection, memoranda on the admissibility of hearsay evidence, arguments of counsel, and the entire record.

In his petition to this court for a writ of certiorari, Leka contends that the trial court departed from the essential requirements of law by granting the State's motion without requiring the State to establish a nexus between the requested records and any ongoing criminal investigation or criminal proceeding.[1]

I.    Certiorari Standard

Orders granting the State's requests for the subpoena of medical records pursuant to sections 395.3025 and 456.057 have been reviewed by petitions for writ of certiorari by this court and others.  See, e.g., Gomillion v. State, 267 So. 3d 502, 506 (Fla. 2d DCA 2019); Faber v. State, 157 So. 3d 429, 430 (Fla. 2d DCA 2015); Ussery v. State, 654 So. 2d 561, 562 (Fla. 4th DCA 1995); Hunter v. State, 639 So. 2d 72, 72 (Fla. 5th DCA 1994).  Subpoenas for patient medical records grant access to materials which have been recognized as private and protected by the Florida Constitution.  Mullis v. State, 79 So. 3d 747, 751 (Fla. 2d DCA 2011) ("Individuals enjoy a right of privacy in their medical records under article I, section 23, of the Florida Constitution." (citing State v. Johnson, 814 So. 2d 390, 393 (Fla. 2002))).  And although "[t]he right to privacy is not absolute and will yield to compelling governmental interests," Johnson, 814 So. 2d at 393, a violation of the constitutional right—and in this case, a violation of either statute—causes immediate harm which is irremediable on postjudgment appeal, see

---

[1]Leka also argues that the trial court deviated from the law by relying on inadmissible hearsay testimony, including statements allegedly made by a treating physician regarding the patient's blood alcohol level.  Because the first argument raised by Leka necessitates the granting of his petition, we decline to reach the second issue.

- 5 -

Gomillion, 267 So. 3d at 506 ("It has long been recognized that a trial court order permitting discovery of information that is privileged or otherwise legally protected as private causes an immediate injury that success in a postjudgment appeal is unable to fix.").

Sections 395.3025 and 456.057 each represent a " 'legislative attempt to balance a patient's privacy rights against legitimate access to' the patient's medical information."  See State v. Sun, 82 So. 3d 866, 870 (Fla. 4th DCA 2011) (quoting Johnson, 814 So. 2d at 393); accord Mullis, 79 So. 3d at 751 n.6.  In pertinent part, section 456.057 provides:

> Except as otherwise provided in this section and in s. 440.13(4)(c), [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient, the patient's legal representative, or other health care practitioners and providers involved in the patient's care or treatment, except upon written authorization from the patient.  However, such records may be furnished without written authorization . . . [i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.

§ 456.057(7)(a)(3).  Similarly, section 395.3025 provides, in relevant part:

> Patient [hospital] records are confidential and must not be disclosed without the consent of the patient or his or her legal representative, but appropriate disclosure may be made without such consent . . . [i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.

§ 395.3025(4)(d).

- 6 -

We note that of the certiorari cases discussing a subpoena ordering production of medical records, almost all of them indicate that a criminal action had been pending against the patient whose medical records were sought prior to the State's request for a subpoena. See, e.g., Gomillion, 267 So. 3d at 504; Faber, 157 So. 3d at 430; Tyson v. State, 114 So. 3d 443, 444 (Fla. 5th DCA 2013); cf. State v. Rivers, 787 So. 2d 952, 953 (Fla. 2d DCA 2001) (reviewing by petition for writ of certiorari an order denying the State's motion for authorization to execute a subpoena for medical records where the defendant had been charged with DUI causing serious bodily injury). However, in at least one case an order granting the State's request for a subpoena of medical records was addressed via certiorari review where charges had not been filed and no proceeding was pending. Hunter, 639 So. 2d at 72. In the case before us— where a criminal action is not pending and the trial court was operating under existing case law—the injury to the petitioner and the complete lack of a remedy through appeal are more significant than in those instances where charges have been filed and an action is pending. See Limbaugh v. State, 887 So. 2d 387, 391 (Fla. 4th DCA 2004) ("Owing to the nature of the right asserted, [the right of privacy in medical records,] and the absence of any pending case against petitioner in which he might raise the issue, we deem the nature and context of the right asserted important enough to exercise our discretion in favor of review [by second-tier certiorari] at this point."). Thus, we exercise our certiorari jurisdiction in this case.

II.    Nexus

Having determined that we should exercise our certiorari jurisdiction, the next issue we must address is whether the trial court departed from the essential

requirements of law in granting the State's request for issuance of the subpoena. In addition to procedural requirements within the statutes, Florida law requires that before a subpoena for the production of medical records may issue, the State must establish that it has a compelling interest in the records. See Johnson, 814 So. 2d at 393 ("[I]n reviewing a claim of unconstitutional governmental intrusion, the compelling state interest standard is the appropriate standard of review."). "[T]he control and prosecution of criminal activity is a compelling state interest" when the State has established "a clear connection between illegal activity and the person whose privacy has allegedly been invaded." Id. The State's burden of proving that "clear connection" in cases involving sections 395.3025 and 456.057 has been described as establishing the relevancy of the requested medical records to the civil or criminal action or as proving the nexus between the two. See, e.g., Faber, 157 So. 3d at 430-31. Leka contends that the trial court failed to apply the law requiring the State to establish a nexus between the requested records and an ongoing criminal action or criminal investigation.

Here, at the hearing in the show cause case, the State did not introduce an accident report or a probable cause affidavit; nor did the State argue the relevancy of the requested medical records to a criminal action. In fact, there is nothing in the record specifying which records the State was seeking. Although the State presented the testimony of Officer Alli, his testimony was largely hearsay and those statements which were not hearsay did little to connect Leka to either the accident Officer Alli had been investigating or to the man Officer Alli observed in the hospital. The trial court even noted: "I think the first step, you know, you've got to have the guy behind the wheel.

- 8 -

So, as I perceive the facts as testified by the witness, he was told that this was the driver of the vehicle who was taken to the hospital.  And so, that's hearsay."  Officer Alli's hearsay testimony did make it apparent that the State was, at least in part, seeking Leka's medical records for purposes of investigating an uncharged DUI despite the State's failure to so argue.  But because there is no subpoena in the record and no subpoena has been executed, neither Leka nor this court knows which medical records the State is seeking or what their relevancy may be.  Cf. Cerroni v. State, 823 So. 2d 150, 151 (Fla. 5th DCA 2002) (indicating that the State was requesting medical records which "pertain[ed] to the blood sample taken from [Cerroni] subsequent to a vehicular accident" (alterations in original)); Ussery, 654 So. 2d at 562 (indicating that the State was seeking "medical records of [Ussery's] hospitalization for injuries received in the accident, particularly the results of tests of blood taken for purposes of medical treatment").  Moreover, the record does not indicate that the trial court was aware of which records the State was seeking.

> [T]he cases have required that the State show a "nexus" between the medical records the State seeks and some material issue in the case by (1) identifying some theory that reasonably makes the records relevant and (2) producing some evidence that makes it reasonable to expect that the records will produce evidence that supports the theory.

Gomillion, 267 So. 3d at 507.  In considering the request for a subpoena for medical records, "the court can rely on the State's argument and the accident report or probable cause affidavit to establish relevance."  Guardado v. State, 61 So. 3d 1210, 1213 (Fla. 4th DCA 2011) (citing McAlevy v. State, 947 So. 2d 525, 529 (Fla. 4th DCA 2006)).  Here, the State neither identified the records sought nor argued the relevancy of the records requested to a criminal action, much less to a theory or material issue in the

- 9 -

case. Cf. Tyson, 114 So. 3d at 445 ("[T]he State did not present evidence to establish relevancy. . . . Tyson's medical records do not relate to any element of the charged offense."). The State's evidence, regardless of its admissibility, failed to establish a nexus between the requested medical records and any criminal action; there were "no police reports, arrest affidavits, or other documents" presented to the court, and the testimony of Officer Alli was insufficient. See Guardado, 61 So. 3d at 1214 (distinguishing Hunter on the basis of evidence presented).

The trial court failed to require the State to present a nexus and to itself consider that nexus—"whether the records sought were directly related to the circumstances surrounding the charges." See Faber, 157 So. 3d at 431; cf. Rivers, 787 So. 2d at 953-54 (holding that the right to privacy was overcome where the records sought by the State "were directly related to the incident which led to the charges against Rivers"). As in Faber, there is nothing in the record indicating the scope of the records requested or that those records would be examined in camera by the trial court. Id. As in Gomillion, there is an "absence" of argument from the State; there was no assertion that Leka's records were relevant to charges against Leka. See Gomillion, 267 So. 3d at 508 (distinguishing Hunter and McAlevy and stating that "the State advanced no theory that made the medical record relevant to any substantive issue in the case"). Simply stated, "[s]ince there is no nexus between [a] criminal prosecution and [Leka's] medical records, the trial court departed from the essential requirements of law in permitting the State to subpoena all of [Leka's] medical records." See Tyson, 114 So. 3d at 445.

III.     Conclusion

The petition for writ of certiorari is granted, and the order granting the State's request for a subpoena is quashed. Where a subpoena is sought as part of a civil or criminal action, the court departs from the essential requirements of law when it grants the subpoena request in the absence of argument connecting the requested medical records to an issue in the action, documentary evidence and other evidence supporting the relevancy of the medical records to the action, and consideration of the scope of the records requested in the proposed subpoena. We note that the State is not precluded from seeking Leka's medical records through a subpoena in a future action. See Guardado, 61 So. 3d at 1214; see also Gomillion, 267 So. 3d at 509 ("[N]othing about our disposition prevents the State from seeking to subpoena such medical records [in the criminal case] where it has shown or can in the future show the requisite nexus.").

Petition for writ of certiorari granted; order quashed.

NORTHCUTT and LUCAS, JJ., Concur.