FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA
_____

No. 1D2023-0785
_____

SWIFT RESPONSE, LLC,

Petitioner,

v.

LANCE R. ROUTT,

Respondent.

_____

Petition for Writ of Certiorari—Original Proceeding.

January 29, 2025

TANENBAUM, J.

Swift Response, LLC, asks for our extraordinary intervention in an ongoing product liability suit, that intervention being to resolve a scope-of-discovery dispute between the parties. Discovery, however, is a procedural, litigation-management device under the trial court's supervision. The order issued by the trial court—now challenged by the present petition—merely regulates the breadth of the discovery that Lance Routt may seek from Swift. Swift does not point to any *material* harm flowing from the order, the only type of harm that—if the order were shown to be a significant deviation from established procedures or legal requirements—could entitle it to some immediate redress from this court. There being no identification of a substantive right

(constitutional or statutory) infringed by that order, we lack jurisdiction to proceed further on the petition, and we dismiss it.[1]

I

Routt sued Swift (along with other defendants), seeking to recover for bodily injury he suffered when a can of "FlexSeal Clear" spray he was using (a product Swift distributes) allegedly combusted without warning. The accident occurred in 2021, but as part of the discovery process, Routt sought product information dating back to 2011. Waiting until the last day of the response period, Swift produced nearly nothing and instead served several boilerplate general objections, including the following two:

> 1. "[Swift] objects to *each and every* request to the extent it is not limited to a specific time and appropriately defined terms."

> 2. "Swift Response's undersigned counsel objects to *each and every* Interrogatory to the extent it calls for the production of privileged information or documents, including information or documents protected by the attorney-client privilege, investigative privilege, consulting expert exemption, information or documents containing or pertaining to work product and documents prepared in anticipation of litigation or trial. Swift Response's counsel further objects to *each and every* Interrogatory to the extent it seeks the disclosure of the identities of, or any work generated by, non-testifying consulting experts retained by or at the direction of Swift Response's attorneys in anticipation or preparation for this and/or other threatened or pending litigation or in connection with the rendering of legal advice to Swift Response. No restatement of, or failure to restate, any

---

[1] We deny Swift's motion for voluntary dismissal, filed just under two weeks after we took oral argument—after this court already expended considerable judicial labor in this matter. *See Pino v. Bank of N.Y.*, 76 So. 3d 927, 927 (Fla. 2011) (holding an appellate court may in its discretion deny motion for voluntary dismissal).

specific objection in the context of these answers shall be construed to imply a waiver of any unstated privilege objections addressed by this General Objection."

(emphases supplied). Specific objections from Swift were not any more informative, those objections instead setting out the usual tropes: that, to varying degrees, the requests were "overbroad," "vague," "ambiguous," and/or "unduly burdensome." Swift did not provide a log or some other specification of documents it was withholding from production based on a claim of privilege or immunity.

Following a hearing, the trial court granted Routt's motion to compel, ordering Swift to produce information from January 1, 2011, forward, but only as that information "relate[s] specifically to FlexSeal Clear" spray—not "other FlexSeal colors," and not any FlexSeal product other than the spray. The trial court later denied Swift's motion for reconsideration and clarification, directing Swift in the same order "to submit a privilege log for in camera inspection as to any documents it believes are responsive to the [order compelling production] but which it claims are privileged." From what we can tell, looking at the record certified to us, no such log or similar catalog of privilege claims was provided. Nothing in the record certified to us via the appendices indicates Swift abided by this instruction, Swift apparently choosing not to make a claim of privilege or immunity with respect to specific documents or information or a specific category of either.

The current petition tries to invoke this court's writ authority to get relief from the order compelling discovery.[2] Swift contends that because the accident involved a product made in 2021, Routt was not entitled to information about any chemical composition of FlexSeal Clear manufactured before then, which would have used different formulae, making that information irrelevant to the

---

[2] We do not read the petition as also challenging the trial court's subsequent order denying reconsideration and directing Swift to identify those documents or information for which it claims a privilege- or immunity-basis for non-production. Swift certainly does not point to any cognizable harm flowing from this direction from the trial court.

issues in the litigation. Swift seems to point to the broad scope of Routt's requests as the source of its harm—the production of irrelevant information (including what it apparently believes would include unspecified documents subject to the attorney-client privilege and a claim of attorney work product) being, in its words, "'cat out of the bag' information." The petition, however, is jurisdictionally flawed. It characterizes Swift's supposed harm as a deprivation "of its legal right to be free from 'carte blanche' disclosure of legally irrelevant information," a claimed legal right lacking any basis in *substantive* law, a claim finding root in neither a constitution nor a statute.

## II

A writ of certiorari is a form of extraordinary relief the Florida Constitution authorizes this court to grant as "necessary to the complete exercise of its jurisdiction." Art. V, § 4(b)(3), Fla. Const. The writ is considered "extra-ordinary" because it is outside the ordinary means by which we wield our power vis-à-vis trial courts, which typically will be through review of their orders on direct appeal. *Cf.* Art. V, § 4(b)(1), Fla. Const. (authorizing direct appellate review of "final judgments or orders of trial courts" and "interlocutory orders in such cases to the extent provided by rules adopted by the supreme court"). A district court's certiorari review, in other words, deviates from the constitutional pathways provided for direct review so that it can consider—and where appropriate, correct—a seriously harmful irregularity that must be addressed immediately, making "certiorari relief [] an extremely rare remedy that will be provided in very few cases." *Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 455 (Fla. 2012) (internal quotations omitted); *see also Seaboard Air Line Ry. v. Ray*, 42 So. 714, 715 (Fla. 1906) (explaining that certiorari, as a common-law writ, is "not to take the place of a writ of error or appeal," but to bring a "certified copy" of the trial court's record up "for inspection" and determination of whether the trial court "exceeded its jurisdiction" or failed to proceed "according to the essential requirements of the law"— "where no direct appellate proceedings" would be available); *Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1098 (Fla. 1987) (emphasizing "that common law certiorari is an extraordinary remedy and should not be used to circumvent the interlocutory

4

appeal rule which authorizes appeal from only a few types of non-final orders").

While extraordinary by nature, certiorari still is "necessary to the complete exercise of [our] jurisdiction" because the Florida Constitution mandates the State's courts "be open to every person for redress of any injury," that mandate in turn imposing a commensurate duty on this court, in our supervisory capacity, to be available for relief, as justice requires, from a trial court's order causing *substantial and material harm*, provided there is no constitutional pathway to full relief via direct appellate review. Art. I, § 21, Fla. Const. (guaranteeing access to courts); Art. V, § 4(b)(3), Fla. Const. (granting district courts jurisdictional writ authority); *see Mut. Ben. Health & Acc. Ass'n v. Bunting*, 183 So. 321, 324 (Fla. 1938) ("The power to issue writs of certiorari, and, in appropriate cases, writs of prohibition or mandamus, enables the Supreme Court to exercise supervisory jurisdiction over other courts, in conformity with the command of section 4 of the organic Declaration of Rights that 'all courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.'").

The access-to-courts provision in the Florida Constitution's Declaration of Rights exists to ensure a means to remedy "an injurious invasion of any right of the individual which is *recognized by or founded upon any applicable principle of law, statutory or common*," plus "our organic [] law." *Cason v. Baskin*, 20 So. 2d 243, 250 (Fla. 1944) (emphasis supplied); *see also Slatcoff v. Dezen*, 76 So. 2d 792, 794 (Fla. 1954) ("We have held that the word 'injury' as used in this section implies the doing of some act which constitutes an invasion of legal rights under statute or common law."); *cf. Kluger v. White*, 281 So. 2d 1, 4 (Fla. 1973) (linking the "right of access to the courts for redress for a particular injury" to remedies "provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla.Stat. s 2.01, F.S.A."). To invoke this court's extraordinary jurisdiction in certiorari, then, a petitioner at the threshold must identify real injury—of a type covered by the

access-to-courts guarantee. *See Kilgore v. Bird*, 6 So. 2d 541, 544 (Fla. 1942) (describing the type of "injury" certiorari is available to remedy as that "which section 4 of the Declaration of Rights of the Florida constitution [predecessor to current section 21] commands shall be remedied by the due course of law in order that right and justice shall be administered"); *see also Martin-Johnson, Inc.*, 509 So. 2d at 1099 ("In *Kilgore v. Bird,* this Court recognized the distinction between discovery orders that merely violate rules of evidence and may be corrected by a reversal, and those that violate *fundamental rights* causing harm that cannot be remedied on appeal." (emphasis supplied)). This requires the petitioner to plead "a substantial invasion of rights," an injury that is "not merely de minimis." *Folsom v. Bank of Greenwood*, 120 So. 317, 318 (Fla. 1929); *see also Cason*, 20 So. 2d at 250 ("The word 'injury,' however, does imply the doing of some act which constitutes an invasion of a legal right.").

Neither abstract, hypothetical, or inchoate harm; nor harm flowing from mere technical failures to abide by a court-created process or rule; could satisfy this jurisdictional harm requirement.[3] *Cf. Clausell v. Hobart Corp.*, 515 So. 2d 1275, 1276 (Fla. 1987) (explaining that "[a] substantive vested right is an immediate right of present enjoyment, or a present fixed right of future enjoyment" and "[t]o be vested a right must be *more than a mere expectation based on an anticipation of the continuance of an existing law;* it must have become a title, legal or equitable, to the

---

[3] This is not to say a trial court's failure to follow established procedural rules—or even its own case-management order—never could be the subject of a certiorari petition. Our point is that the failure to follow a rule—by itself, without more context—cannot cause substantive harm because rules do not establish rights, so infringement of a rule is not necessarily an infringement of a right. If the trial court announces, for no good reason, it will not be following the rules of procedure in a case; or it arbitrarily chooses not to follow or enforce litigation parameters it set by order; at that point, a petitioner might be able to point to substantive harm by averring the trial court has infringed on the constitutional right to a fair trial before an impartial judge; or, if there is a liberty or property interest at stake, the right to due process.

present or future enforcement of a demand" (internal citations omitted)); *State v. Raymond*, 906 So. 2d 1045, 1048–49 (Fla. 2005) (distinguishing between "practice and procedure" and "substantive law," the former being "the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion" or "the method of conducting litigation involving rights and corresponding defenses"; the latter being that "which creates, defines, and regulates rights," including "those rules and principles which fix and declare the primary rights of individuals with respect to their persons and property," thereby bringing it "within the Legislature's domain").

For this reason, certiorari is not usually available to address discovery problems. *See Bd. of Trs. of Internal Improvement Tr. Fund*, 99 So. 3d at 456 ("Certiorari jurisdiction does not lie to review every erroneous discovery order." (internal citation omitted)). Discovery in civil litigation is a function of court procedure, an historically equitable tool now imported by the supreme court into the civil rules. *See Igou v. Jimmie's Truckstop, Inc.*, 372 So. 3d 1292, 1292 (Fla. 1st DCA 2023) (Tanenbaum, J., concurring); *cf.* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. Pa. L. Rev. 909 (1987) (same); Stephen N. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C. L. Rev. 691 (1998); John H. Beisner & U.S. Chamber Institute for Legal Reform, *The Centre Cannot Hold: The Need for Effective Reform in the U.S. Civil Discovery Process* (May 2010), *available online at* https://instituteforlegalreform.com/research/the-centre-cannot-hold-the-need-for-effective-reform-of-the-u-s-civil-discovery-process/; Richard Marcus, *"Looking Backward" to 1938*, 162 U. Pa. L. Rev. 1691 (2014) (tracing origin of pre-trial discovery to incorporation of equity practice into consolidated federal rules of civil procedure). Discovery being procedural, it cannot be the source of a substantive right, so there is neither a right *to* discovery nor *against* discovery. Discovery is simply what the supreme court allows by rule and what the trial court allows by order to compel or order of protection.

Inconvenience, embarrassment, or discomfort flowing from such procedural decisions does not implicate any substantive right

and is not cognizable as certiorari injury.[4] *Cf. Jaye v. Royal Saxon, Inc.*, 720 So. 2d 214, 215 (Fla. 1998) (rejecting "(1) the substantial injury caused when aggrieved parties must 'show their hand' in a preliminary nonjury trial; (2) a situation in which the age of the parties and witnesses affects whether a second trial is feasible; and (3) the time, effort, and expense of trying a case twice" as harm to be remedied through certiorari); *but cf. Brooks v. Owens*, 97 So. 2d 693, 695 (Fla. 1957) (suggesting that discovery could be so far-reaching and invasive as to violate a party's "constitutional rights against deprivation of liberty and property without due process of law and against unreasonable searches and seizures would be violated," injury cognizable in certiorari). The supreme court emphasized this point when it stated—at least five times—that "overbreadth" is not sufficient to establish the harm required for certiorari jurisdiction. *See Bd. of Trs. of Internal Improvement Tr. Fund*, 99 So. 3d at 456 ("Overbreadth is not a proper basis for certiorari review of discovery orders."); *id.* ("This Court and other district courts of appeal have restated with frequency that overbreadth is *not sufficient,* nor is it a basis, for certiorari relief."); *id.* (noting "overbreadth alone is not a basis on which such [certiorari] jurisdiction will be granted"); *id.* at 457 (explaining that the court was quashing the district court's decision, "which held that relief was appropriate solely because the discovery order at issue was overbroad"); *id.* ("*Overbreadth* is not a basis for [certiorari] relief."). Bottom line: "Overbreadth" in discovery cannot serve as a substitute for the threshold requirement—applicable to *any* certiorari petition filed in this court—that "material harm of an irreparable nature" be shown. *See id.* at 456.

## III

How odd it is, then, that Swift would seek certiorari relief based on the argument that discovery requests from Routt ostensibly were "overbroad"—claiming that the trial court's "overbroad Discovery Order would cause irreparable harm to

---

[4] Again, arbitrary decisions by the trial court as to these procedural matters—if they become serious enough—could implicate a constitutional right, the infringement of which might support certiorari jurisdiction.

Defendant"; and asking that we direct "discovery be limited to the particular model of Flex Seal Clear spray used by [Routt], and protect[] attorney-client and work-product privileged information"—information not identified by any sort of log but mentioned only in terms of generalities. Swift does not even cite *Board of Trustees of the Internal Improvement Trust Fund v. American Educational Enterprises, LLC* in its petition. In its reply (after Routt pointed out the omission), Swift attempts to turn the supreme court's use of "overbreadth" in that decision on its head, contending the reference is to harm "with respect to *relevant* information that is *discoverable* in the first instance," rather than what an "overbroad" objection necessarily presumes—harm because the objectionable request seeks information that *is not* discoverable. (first emphasis supplied). Swift doubles down on this approach by arguing—without citation to any constitutional or statutory provision—there is a "substantive prohibition of discovery in a products liability action regarding dissimilar products not used by the plaintiff," then characterizing this principle as "a categorical rule of law" that establishes "a plaintiff is not entitled to *any* discovery regarding models of a product other than the one the plaintiff used unless the plaintiff first comes forward with evidence affirmatively establishing a substantial similarity among them."

It is here that Swift's jurisdictional argument falls apart. Swift contends that "Florida courts have long recognized that certiorari is the appropriate vehicle to challenge orders allegedly compelling discovery improperly." (quotation and citation omitted). While in a way this is true, it misses the point. When certiorari jurisdiction has been found, it has been rooted *not* in the *scope* of the discovery order but in a *right*—cognizable separately under substantive law rather than in the civil rules themselves—infringed or impeded by that order. *See Bd. of Trs. of Internal Improvement Tr. Fund*, 99 So. 3d at 457 (identifying the "material injury" flowing from a discovery request that could support certiorari jurisdiction as follows: "'cat out of the bag' material that could be used to injure another person or party outside the context of the litigation, and material protected by privilege, trade secrets, work product, or involving a confidential informant may cause such injury if disclosed"); *cf. Seaboard Air Line Ry.*, 42 So. at 715 (suggesting that a court's order in excess of its jurisdiction being a

9

basis for cognizable certiorari injury); *Brooks*, 97 So. 2d at 695 (noting deprivation of liberty and property without due process and unreasonable search or seizure as constitutional injuries that could support certiorari); *Belair v. Drew*, 770 So. 2d 1164, 1166 (Fla. 2000) (approving certiorari jurisdiction based on alleged unconstitutional infringement of "personal parental rights" and citing infringements of First, Fourth, and Fifth Amendment rights as other injuries cognizable in certiorari); *Beverly Enterprises-Florida, Inc. v. Ives*, 832 So. 2d 161, 162 (Fla. 5th DCA 2002) (considering a claim based in a privilege against discovery of information involving "self-critical analysis or quality assurance information" under section 766.101, Florida Statutes); *Gomillion v. State*, 267 So. 3d 502, 506 (Fla. 2d DCA 2019) (basing certiorari jurisdiction on injury flowing from "the impairment of [a] legally-recognized privacy interest" rooted in article I, section 23 of the Florida Constitution).

Swift, at all events, cannot identify a *substantive* right—one rooted in a constitution or statute—that has been infringed or violated by the trial court's discovery order. If Swift is suggesting there is a special substantive right against "overbroad" discovery in product-liability suits, we do not see it, and Swift fails to cite to a constitutional or statutory provision that supports the suggestion. Swift relies instead on several pre-*Board of Trustees* district court decisions to support its claim. Holding aside the point that the courts are without authority to *create* a new substantive right—and the point, as we already explained, that discovery procedures themselves cannot be the source of a harm to be remedied as a matter of right (in the absence of some arbitrariness implicating a constitutional right to procedural fairness)—each of those decisions rested on a premise that certiorari relief was available to address overbroad discovery, a premise no longer valid following the supreme court's abrogation of it in *Board of Trustees*.[5] *Board of Trustees* makes quite clear what is not included

---

[5] The supreme court went so far as to catalog its disapproval "of other decisions that have provided certiorari relief on the basis of overbreadth," noting the list was not exhaustive. *Bd. of Trs. of Internal Improvement Tr. Fund*, 99 So. 3d at 459. While not on the list, these three decisions—on which Swift relies to varying

in this category: orders going too far in the scope of discovery compelled. Simply put, a party in civil litigation—be it a product-liability suit or otherwise—has no free-standing substantive right against overbroad discovery enforceable through certiorari. We reject Swift's jurisdictional argument on this front.

Swift's attempt, in the alternative, to frame its injury claim as a matter of privilege or immunity fares no better. Seemingly, Swift contends the court's order compelling discovery is so broad that it invariably will require the disclosure of information subject to a privilege or immunity; such a contention overlooking the trial court's direction that any such claim be recorded in a log, as well as Swift's own reservation of right to claw back any inadvertently disclosed privileged or immune information. Suffice it to say here, Swift cannot repackage its objection to Routt's discovery requests (and to the trial court's order compelling their fulfillment) this way to circumvent the supreme court's admonishment against overbreadth as a basis for certiorari. Moreover, we agree with the other district courts of appeal that have held a privilege or immunity claim is not ripe for review until a log or other description of withheld documents and information is provided and the trial court has ruled on the entitlement to protection for each claim. *See Gosman v. Luzinski*, 937 So. 2d 293, 296 n.1 (Fla. 4th DCA 2006) ("Obviously, if the sole objection to discovery were that

---

degrees to support both its jurisdictional and merits arguments—indubitably fall within the supreme court's disapprobation—rendering them of no use to salvage Swift's petition, their arising out of product-liability suits being a distinction without a difference for the purpose of jurisdictional analysis. *See Mazda Motor Corp. v. Quinn*, 524 So. 2d 1021, 1024 (Fla. 1st DCA 1987) (distinguishing prior supreme court decision because it "did not involve a direct challenge *to an overbroad discovery order*" (emphasis supplied)); *Am. Med. Sys., Inc. v. Osborne*, 651 So. 2d 209, 210 & n.1 (Fla. 2d DCA 1995) (granting "certiorari because the order compelling answers to certain interrogatories is overbroad," noting that "[c]ertiorari is a proper remedy for overbroad discovery orders"); *Nissan Motors Corp. v. Espinosa*, 716 So. 2d 279, 280 (Fla. 4th DCA 1998) (relying on *Osborne* to address court-ordered, overly "broad discovery").

11

it sought privileged documents, then compliance with Rule 1.280(b)(5) would be required prior to any hearing on the objection as the information contained in the privilege log would be necessary to assess the applicability of the privilege or protection." (internal quotation omitted)); *Dade Truss Co. Inc. v. Beaty*, 271 So. 3d 59, 65 (Fla. 3d DCA 2019) ("Based on the record before us, we treat the circuit court's order as a preliminary ruling that the information is discoverable, noting that privileges claimed with regard to specific documents must be affirmatively asserted through the filing of a privilege log, or the segregation of documents claimed to be privileged by the non-party for further consideration by the trial court." (internal quotation omitted)); *Hertz Corp. v. Sider*, 311 So. 3d 1004, 1007 (Fla. 2d DCA 2021) (explaining that "[a] claim of work-product protection or attorney-client privilege is not mature for review when a privilege log has not been filed," and until "a privilege log identifying documents and other information that have been withheld from production on the basis of privilege," claims of privilege and immunity "are not ripe for review" in certiorari).

We do note there does not have to be a formal log. *See Andreatta v. Brown*, 330 So. 3d 589, 590 (Fla. 1st DCA 2021). But Swift does first need to "withhold[] information otherwise discoverable" and then "make the claim [of privilege or work-product protection] expressly." Fla. R. Civ. P. 1.280(c)(6). That claim must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." *Id.* The claim need not be "document-specific"; it can be "category specific" if "the category itself is plainly protected." *Nevin v. Palm Beach Cnty. Sch. Bd.*, 958 So. 2d 1003, 1008 (Fla. 1st DCA 2007) (holding that a privilege claim was not waived, despite the absence of a log, because the party consistently asserted the claim as "to all findings and opinions of an expert retained by counsel in anticipation of litigation and who is not going to testify at trial," which "clearly [was] a categorical claim of privilege, [] the category referenced [] undeniably protected by work-product immunity" based on "the very nature of the individual who prepared the findings, documents, reports, and

12

opinions"). No document-specific or category-specific claim appears in the record certified to us via the parties' appendices.

Because Swift did not make a document-specific or a category-specific claim of privilege or immunity, based in a constitution or statute—as the trial court invited Swift to do—there is no rejection of such a claim, causing harm, that we could remedy on this petition. Absent some disposition in the order rejecting a specifically claimed privilege or immunity regarding identified documents or information, Swift cannot rely on such a claim in certiorari to support jurisdictional harm.

*  *  *

It is a simple enough proposition: We, as a district court of appeal, have no jurisdiction under the Florida Constitution to entertain a petition for relief on certiorari where the trial-court order being challenged does not infringe or impede a right rooted in a constitution or statute. This means there is *no certiorari jurisdiction* to review discovery orders *not* causing this kind of demonstrable, material harm. That harm does not appear on the face of Swift's petition, so we have no jurisdiction to reach its merits.

DISMISSED.

B.L. THOMAS, J., concurs; LONG, J., concurs in result only with an opinion.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

LONG, J., concurring in result only.

I would dismiss this case, but for a different reason. On June 23, 2023, Petitioner filed a notice of voluntary dismissal under Florida Rule of Appellate Procedure 9.350(b). Because the

Petitioner is no longer seeking the writ from this Court, I would grant the voluntary dismissal.

_____

Sylvia Walbolt and Christopher James Norris of Carlton Fields, P.A., Tallahassee; Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, for Petitioner.

Bryan S. Gowdy, Rebecca Creed, and Nicholas McNamara of Creed & Gowdy, P.A., Jacksonville, for Respondent.